KESSLER, P.J.
¶1 Calvin Lee Brown appeals a judgment of conviction, entered upon guilty pleas, to one count of possession of heroin with intent to deliver and one count of human trafficking. Brown also appeals the order denying his postconviction motion for relief. We affirm.
BACKGROUND
¶2 On September 23, 2016, Brown was charged with one count of possession of heroin with intent to deliver, one count of possession of cocaine with intent to deliver, one count of keeping a place of prostitution, two counts of human trafficking, and one count of keeping a place of prostitution as a party to a crime.
¶3 According to the criminal complaint, on September 20, 2016, J.R.R. told Detective Nick Stachula of the West Allis Police Department that she was a drug addict and was held against her will at Brown's West Allis residence for six days. She said that she went to the residence to visit a friend, Valarie Miller, but when she arrived, Brown took her phone and her purse and supplied her with cocaine and heroin. J.R.R. overdosed at one point. While she was unconscious, Miller took pictures of her in her underwear and posted them on a prostitution solicitation website. She further told Stachula that Brown wanted her to engage in prostitution in exchange for drugs and that Brown stored drugs in Tupperware located either in the living room or a locked refrigerator.
¶4 That same day, Detective Jerritt Mees conducted a follow-up interview with J.R.R. J.R.R. provided Mees with more details about her time at Brown's house, including Brown's distribution of drugs to the women in the house and the location of the drugs.
¶5 Stachula applied for a search warrant of Brown's residence. In the affidavit, Stachula described his experience and his interview with J.R.R. Stachula also stated that J.R.R. provided him with the phone number used to set up prostitution dates. West Allis police checked the website described by J.R.R. and saw several advertisements using the phone number provided by J.R.R., including an advertisement using a picture of an unconscious J.R.R. in her underwear. Stachula's affidavit also stated that he asked a West Allis police officer to conduct surveillance of Brown's residence while Stachula continued his investigation. The officer observed several occupants of the residence enter a vehicle parked in front of the residence. The vehicle was registered to Brown and had an emissions suspension. The officer conducted a traffic stop and ultimately arrested Brown and Miller. Stachula's affidavit further stated that he made contact with Brown after his arrest and asked for consent to search Brown's residence. Brown refused consent.
¶6 The search warrant was subsequently executed. At Brown's residence, officers found ledgers containing service prices and ads for the prostitution website, as well as a plastic container containing unused condoms, lubricants, and lotion. Inside a locked refrigerator, they found two Tupperware containers. One contained $ 2500 in currency. The other contained plastic bags with heroin and cocaine. In addition, officers found syringes, cotton balls, tourniquets, a burnt spoon, baking soda, sandwich bags, a scale, and paperwork connecting Brown to the residence.
¶7 Brown moved to suppress the evidence seized during the execution of the search warrant. Brown argued that the warrant lacked probable cause because Stachula's affidavit: (1) did not establish J.R.R.'s reliability and credibility; (2) contained stale information; (3) lacked sufficient information to support suspicion of possible prostitution activity; and (4) "contained intentional or reckless omissions of fact, the inclusion of which would have negated probable cause." Specifically, Brown alleged that the affidavit omitted the fact that the circuit court had issued a bench warrant for J.R.R.'s arrest on September 9, 2016, based on J.R.R.'s violation of a deferred prosecution agreement in a drug case. Brown also claimed that J.R.R. did not report that Brown was holding her against her will until after officers arrested her on September 20, 2016.
¶8 The circuit court denied Brown's motion without an evidentiary hearing, stating, "I don't see any problems ... with the fact that the warrant was issued based upon the facts that were contained as alleged in the affidavit." Brown subsequently pled guilty to two charges-one count of possession with intent to deliver heroin and one count of human trafficking.[1]
¶9 Brown filed a postconviction motion, arguing, as relevant to this appeal, that he was entitled to a Franks / Mann hearing.[2] The motion challenged the probable cause of the warrant and J.R.R.'s credibility. Specifically, the motion argued that the warrant failed to include information about J.R.R.'s criminal activity, including a pending drug charge, a failure to appear in court, and an arrest on a bench warrant, among other things. The motion also noted that when J.R.R. was in custody following her arrest, she did not make any allegations against Brown at that time.
¶10 The postconviction court denied Brown's motion without a hearing, stating that "[e]ven if the omitted information had been included, the affidavit would still have established probable cause to issue a search warrant." The court noted that Brown was required to make a showing that facts from the affidavit were omitted with "reckless disregard for the truth," that there was nothing false about the officer's affidavit, that J.R.R. was not provided with any sort of credit in her criminal matter, and that the officer corroborated aspects of J.R.R.'s statements by searching the prostitution website and by surveilling Brown's residence. This appeal follows. Additional facts are included as relevant to the discussion.
DISCUSSION
¶11 On appeal, Brown reiterates the argument made in his postconviction motion, namely, that he was entitled to a Franks / Mann hearing because Stachula's affidavit deliberately excluded information pertaining to J.R.R.'s credibility as an informant.
¶12 A Franks / Mann hearing is required if a defendant makes a "substantial preliminary showing" that the search warrant affidavit omitted undisputed facts that are critical to the determination of probable cause. See Franks v. Delaware , 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (hearing required upon substantial preliminary showing that a false statement was included in an affidavit with reckless disregard for the truth and that the statement is necessary to the finding of probable cause); State v. Mann , 123 Wis. 2d 375, 385-89, 367 N.W.2d 209 (1985) ("[A]n omitted fact [is] the equivalent of 'a deliberate falsehood or a reckless disregard for the truth' " if it is "an undisputed fact that is critical to an impartial judge's fair determination of probable cause.") (citation omitted). "Where the omitted critical fact is undisputed it will not involve credibility determinations, the weighing of evidence, or the drawing of one of several inferences from a fact." Mann , 123 Wis. 2d at 389, 367 N.W.2d 209. The defendant must show that the omitted facts, if included, would prevent a finding of probable cause. Id. at 388-89, 367 N.W.2d 209. "[I]f, when the material previously omitted is inserted into the complaint, there remains sufficient content ... to support a finding of probable cause, no ... hearing is required." Id. at 388, 367 N.W.2d 209.
¶13 "In deciding whether probable cause exists for the issuance of a search warrant, the reviewing court examines the totality of the circumstances presented to the warrant-issuing [judge] to determine whether [he or she] had a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing." State v. Romero , 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756. "The task of the warrant-issuing [judge] 'is simply to make a practical, common[ ]sense decision whether, given all the circumstances set forth in the affidavit ..., including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " Id. (citation and two sets of quotation marks omitted; ellipses in Romero ). In other words, all that is required is a showing of a fair probability that evidence of a crime will be found at a specific place. See State v. Ward , 2000 WI 3, ¶27, 231 Wis. 2d 723, 604 N.W.2d 517.
¶14 We conclude that Brown has failed to make a "substantial preliminary showing" that the omitted information about J.R.R. was critical to a probable cause determination. See Franks , 438 U.S. at 155-56, 98 S.Ct. 2674. The information included in the affidavit supports a commonsense, practical determination of a fair probability that evidence of Brown's crimes would be found in his residence. Stachula and other officers corroborated J.R.R.'s allegations about Brown's connection to the residence, prostitution, and drug-related activities. Following Stachula's conversation with J.R.R., Stachula requested surveillance of Brown's property. West Allis police observed a vehicle, registered to Brown, parked outside of the property. Police also observed people exiting the residence and entering the vehicle. When police stopped the vehicle, the officers saw Brown in the driver's seat, Miller in the front passenger's seat, and "T.B.," a person whom J.R.R. identified as being involved in prostitution at the residence, in the back seat. Brown told the officers that he resided at the residence. J.R.R. also told Stachula that Miller posted pictures of her on a prostitution website while J.R.R. was unconscious and J.R.R. provided Stachula with the specific phone number associated with prostitution activity at the residence. West Allis police found multiple advertisements on the website associated with the phone number J.R.R. provided, including advertisements with a picture of J.R.R. lying in a bed in her underwear, pictures of T.B., and a picture of Miller. The dates and the content of the advertisements corroborated J.R.R.'s statements to Stachula. Finally, J.R.R. told Stachula that Brown provided her with heroin and cocaine and described how and where Brown stored the drugs.
¶15 We agree with the State that "[t]he officers' corroboration of [J.R.R.]'s statements through surveillance, a traffic stop, record checks, and an examination of the [website] advertisements significantly enhanced the observational reliability of [J.R.R.'s] detailed allegations." The information in the affidavit was accurate, corroborated, and sufficient for a magistrate to determine probable cause. Based on the totality of these circumstances, the omitted information was not critical to a probable cause determination.
¶16 For the forgoing reasons, we affirm the circuit court.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

One count of human trafficking was dismissed on the State's motion. The remaining two charges were dismissed but read in.

See Franks v. Delaware , 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and State v. Mann , 123 Wis. 2d 375, 367 N.W.2d 209 (1985).