COURT OF APPEALS
DECISION
DATED AND FILED

July 24, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP776-CR**

Cir. Ct. No. **2020CF394**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

  V.

KEVIN G. HARKNESS,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Reversed.*

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. The State of Wisconsin appeals a circuit court order suppressing evidence obtained from a blood sample taken from the defendant, Kevin Harkness, following a motorcycle accident. The blood sample was obtained pursuant to a warrant, and the single issue presented on appeal is whether, when a false statement that Harkness refused a blood draw is excised from the warrant affidavit, the remaining information in the affidavit was sufficient to establish probable cause to support the issuance of the warrant. We conclude that the answer is yes, and we reverse the order of the circuit court.

## BACKGROUND

¶2     On June 14, 2020, at 12:06 a.m., a City of La Crosse police officer was dispatched to the scene of an accident involving one motorcycle. When the officer arrived at the scene, the fire department was already there, and Harkness was on the ground beside the motorcycle. The officer observed slurred speech from Harkness as he was cared for by first responders. A firefighter who provided care to Harkness stated that he smelled the odor of intoxicants coming from Harkness's breath. Harkness was transported to a hospital via ambulance, and the officer followed.

¶3     Police dispatch informed the officer that Harkness had five prior convictions for operating while intoxicated (OWI). Harkness was admitted to the emergency room at the hospital for treatment of his injuries. The officer spoke with Harkness and observed that he had slurred speech as well as a slight odor of intoxicants coming from his breath. Harkness was not cooperative with medical staff and was sedated in the emergency room.

¶4     Due to Harkness being sedated and unable to answer questions related to the crash, the officer went back to the police department to request a

warrant for a blood draw. The preprinted affidavit form used by the officer to request the warrant contained boilerplate language that Harkness had been read the Informing the Accused form and refused to submit to a chemical test of his blood as requested by the officer. Harkness had not been read the Informing the Accused form, and no such refusal to submit to a chemical test of his blood was made by Harkness. The judge granted the warrant. Harkness's blood was drawn, and testing revealed a blood alcohol concentration (BAC) of 0.154.

¶5     The State charged Harkness with OWI and operating with a prohibited alcohol concentration, both as sixth offenses. *See* WIS. STAT. §§ 346.63(1)(a), (b), 346.65(2)(am)5. (2023-24).[1] Harkness moved to suppress the results of the blood draw pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), and *State v. Mann*, 123 Wis. 2d 375, 385-86, 388, 367 N.W.2d 209 (1985). Harkness asserted that the false statements that he was read the Informing the Accused form and refused a blood draw were intentionally or recklessly included in the officer's warrant affidavit. Harkness argued that, without the false statement regarding refusal, the only information in the warrant affidavit that could support probable cause was that he was uncooperative, that there was a faint odor of intoxicants, and that he slurred his speech. Harkness argued that these facts were insufficient to establish probable cause to support the issuance of a warrant for a blood draw.

¶6     The circuit court held an evidentiary hearing at which the officer testified. The court granted the suppression motion at the end of the hearing. The

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

court then issued a written order suppressing the results of the blood test. The State appeals the suppression order.[2]

## DISCUSSION

¶7 "A blood draw to uncover evidence of a crime is a search within the meaning of the Fourth Amendment." *State v. Tullberg*, 2014 WI 134, ¶31, 359 Wis. 2d 421, 857 N.W.2d 120. Ordinarily, the Fourth Amendment requires a search warrant for a blood draw unless one of the recognized exceptions to the warrant requirement exists. *State v. Blackman*, 2017 WI 77, ¶4, 377 Wis. 2d 339, 898 N.W.2d 774. Here, the parties do not argue that any exception to the warrant requirement applies. Rather, the blood was obtained pursuant to a warrant, and the State contends that the circuit court should not have suppressed the results. The State argues that Harkness's suppression motion should have been denied because, even in the absence of the false statement in the warrant affidavit that Harkness refused a blood draw, there was still sufficient information in the affidavit to support a finding of probable cause. We agree, and we reverse the circuit court order on that basis.

¶8 "A search warrant may issue only on probable cause." *State v. Romero*, 2009 WI 32, ¶16, 317 Wis. 2d 12, 765 N.W.2d 756. In determining

---

[2] Harkness's appellate brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended in 2021, *see* S. CT. ORDER 20-07 (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for eFiling. As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at xl.

whether probable cause is established in an affidavit for a search warrant, "we employ a 'totality of [the] circumstances standard'" to determine whether there is a "'fair probability'" that evidence or contraband will be found. ***State v. Popp***, 2014 WI App 100, ¶28, 357 Wis. 2d 696, 855 N.W.2d 471 (quoted sources omitted).

¶9 Typically, we accord "'great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause.'" ***Romero***, 317 Wis. 2d 12, ¶18 (quoted source omitted). However, if information in a warrant affidavit must be excised because it is inaccurate or misleading, we independently review whether the affidavit establishes probable cause to issue a search warrant after those excisions are made. *See* ***State v. Herrmann***, 2000 WI App 38, ¶9, 233 Wis. 2d 135, 608 N.W.2d 406 (we independently determine whether the facts meet the constitutional standard); ***State v. Anderson***, 138 Wis. 2d 451, 464, 406 N.W.2d 398 (we make this determination based on the allegations remaining after the false or misleading statements are excised).

¶10 Under ***Franks***, a court is required to conduct a hearing on a motion to suppress evidence when a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included ... in the warrant affidavit, and if the allegedly false statement [was] necessary to the finding of probable cause." ***Franks***, 438 U.S. at 155-56. In ***Mann***, 123 Wis. 2d at 385-90, our supreme court extended the ***Franks*** rule "to include omissions from a warrant affidavit if the omissions are the equivalent of deliberate falsehoods or reckless disregard for the truth." ***State v. Jones***, 2002 WI App 196, ¶25, 257 Wis. 2d 319, 651 N.W.2d 305.

5

¶11 Following a *Franks/Mann* hearing, the circuit court first must determine whether the defendant met the defendant's burden of proving the existence of false statements or material omissions in the warrant affidavit by a preponderance of the evidence. *Mann*, 123 Wis. 2d at 389. If so, the court then must "consider the effect on a probable cause finding if the misstatement had not been stated or the omission had been stated on the face of the" affidavit and determine whether, absent the misstatement or omission, the warrant affidavit is sufficient to support a finding of probable cause. *Id.* Suppression is appropriate only if the defendant proves that a misstatement or material omission exists and also proves that, without the misstatement or omission, the affidavit is insufficient to support a finding of probable cause. *Id.* at 387.

¶12 At the close of the *Franks/Mann* hearing in this case, the circuit court determined, at least implicitly, that Harkness had met his burden of showing that the warrant affidavit contained a false statement. The court expressed justified concern about law enforcement's use of a preprinted form containing boilerplate language without clearly indicating to the warrant-issuing judge that certain statements in the form were not true. However, the court failed to proceed to the second, critical step of the *Franks/Mann* analysis, which is to consider whether the warrant would support a probable cause finding in the absence of the false statement. *See Mann*, 123 Wis. 2d at 389. We apply that step here and conclude that, in the absence of the false statement that Harkness refused a blood draw, the remaining information in the warrant affidavit was sufficient to support a probable cause determination under the "'totality of [the] circumstances standard.'" *See Popp*, 357 Wis. 2d 696, ¶28 (quoted source omitted).

¶13 The warrant affidavit states that a faint odor of intoxicants, slurred speech, and uncooperative conduct were observed from Harkness. In his

suppression motion and related filings, Harkness does not dispute that there was an odor of alcohol coming from him or that he had slurred speech. In his appellate brief, Harkness asserts in a speculative manner that gasoline fumes and/or antiseptic odors were likely present at the scene of the crash and could explain the odor, but he fails to provide any record citation to support this assertion. This court need not consider arguments that are unsupported by adequate factual citations or are otherwise undeveloped. *See Dieck v. Unified Sch. Dist. of Antigo*, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565 (Ct. App. 1990) (unsupported factual assertions need not be considered without a record cite).

¶14 Harkness also argues that a faint odor of intoxicants, slurred speech, and uncooperative conduct, without more context, are insufficient to support a finding of probable cause. With this argument, Harkness ignores the fact that several other statements in the warrant affidavit provide additional support for a probable cause finding. The warrant affidavit states that a routine check of Harkness's driving record showed that he had five prior OWI convictions. Our supreme court has determined that even a single prior OWI conviction can be taken into account in determining whether there is probable cause to believe that a defendant was under the influence of an intoxicant while operating a vehicle. *State v. Lange*, 2009 WI 49, ¶33, 317 Wis. 2d 383, 766 N.W.2d 551. Harkness's five prior OWI convictions, along with other facts contained in the warrant affidavit, contribute to a probable cause finding to support issuance of the warrant in this case.

¶15 Because of his prior OWI convictions, Harkness was prohibited from driving with a BAC above 0.02. WIS. STAT. § 340.01(46m)(c). The fact that Harkness was subject to a 0.02 BAC limit is also relevant because it means that even slight signs of ingestion of alcohol could lead a reasonable person to believe

that Harkness had exceeded the 0.02 limit, which may be exceeded with the ingestion of a single alcoholic drink. *See* ***State v. Adell***, 2021 WI App 72, ¶29, 399 Wis. 2d 399, 966 N.W.2d 115.

## CONCLUSION

¶16 In light of the above facts and under the totality of circumstances, we conclude that, in the absence of the false statement that Harkness refused a blood draw, the remaining information in the warrant affidavit was sufficient to support a probable cause finding and the issuance of a warrant for a blood draw. Therefore, the circuit court erred in granting Harkness's motion to suppress evidence obtained from the blood draw.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

8